IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| JOHN R. FISER, INC., | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:18-cv-00482 |
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, | ) Judge Travis R. McDonough |
| Defendant. | ) Magistrate Judge H. Bruce Guyton |
| | ) JURY DEMANDED |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, John R. Fiser, Inc, by and through legal counsel, pursuant to this Honorable Court's Order of January 15, 2019 [Doc. 13], hereby for first amended complaint against the Defendant, Selective Insurance Company of South Carolina, states as follows:

### THE PARTIES

1. Plaintiff John R. Fiser, Inc., ("Insured") is a Tennessee corporation with its principal place of business in Knox County, Tennessee.

2. Defendant Selective Insurance Company of South Carolina ("Selective") is an insurance company authorized to do business in Tennessee. Pursuant to the Court Order [Doc. 13], the Complaint [Doc. 1] is being amended herein. Selective is served through counsel listed for service via ECF.

### VENUE AND JURISDICTION

3. Venue and jurisdiction are appropriate in this Court in the United States District Court of Tennessee at Knoxville, in that the events which comprise the cause of action occurred in Blount County, Tennessee, which is in the Eastern District. Further,

Selective conducts business in the Eastern District, including the selling of the insurance policy at issue which insured the Insured's building, described below, which is located in Blount County, Tennessee.

## FACTUAL ALLEGATIONS

4. The Insured owns commercial real property located at 3260 North Bend Circle, Northpark Boulevard, Building 4, Alcoa, Blount County, Tennessee (the "Subject Property").

5. In late 2016, the Insured noticed cracks forming in the center of the end wall and foundation of the Subject Property.

6. The Insured hired GEOServices to investigate the underlying reason for the cracks forming in the walls and foundation of the Subject Property. GEOServices conducted a limited geotechnical exploration at the Subject Property and in its report to the Insured dated November 14, 2016, opined that results from the initial limited geotechnical exploration at Building 4 within a reasonable degree of engineering certainty indicated that subsidence due to sinkhole activity was the most likely cause of the observed distress at Building 4. A true and accurate copy of the November 14, 2016 GEOServices report is attached hereto as **Exhibit "A"** and incorporated herein by reference.

7. The Insured maintained a Building and Business Personal Property insurance policy with effective dates of December 31, 2015 to December 31, 2016 with a policy limit of $84,092,826 (the "Policy" or the "Insurance Policy") with Selective. A true and accurate copy of the Policy is attached hereto as **Exhibit "B"** and incorporated herein by reference.

8.     On or around December 16, 2016, the Insured submitted a claim under the Policy (the "Claim") with Selective based on the report of GEOServices attached previously as **Exhibit A**.

9.     Selective denied Insured's Claim.

10.    In denying the Claim, Selective took (and continues to take the position) the position that the loss to the Subject Property was not caused by sinkhole activity/collapse, but rather from consolidation of fill soil over time. Specifically, Selective stated the Loss:

> [W]as caused by differential foundation movement resulting from long-term consolidation of fill soil, which may have been exacerbated by shrink/swell clays. There has been additional evidence of prior repairs to the building and soil surrounding the building. This includes previously repaired cracks in the block walls of the building, concrete buried next to the building, and review of street side photos (Google Maps) dating back to 2012 which show displacement of the concrete blocks.
>
> The information received and reviewed indicates a long term issue at the described location. Further, no documentation has been received which confirms sinkhole collapse has occurred at this property. Based on this and our prior communications, we must reiterate our previous communications that there is unfortunately, no coverage afforded for this for this loss and we must respectfully deny your claim. We regret a more favorable decision could not have been reached.

11.    The Insured asserts that Selective, without good cause or engineering findings, has denied the Claim.

12.    The Insured's geological information and findings from GEOServices clearly identifies that the loss in question was caused by a covered event, a Sinkhole Collapse.

13.    The Insured further submitted to Selective three (3) separate reports and findings of GEOServices, including the following: (a) "Report of Limited Geotechnical Exploration, Northpark Boulevard Buildings 4, 5, and 10 Distress Evaluation", dated

3

November 14, 2016; (b) "Addendum No, 2", dated December 20, 2017; and (c) "Addendum No. 3" dated January 9, 2018. True and accurate copies of these additional reports from GEOServices are attached hereto as **Collective Exhibit "C"** and incorporated herein by reference.

14. From the first investigation and report of November 14, 2016 and going forward, GEOServices has consistently opined that results from the initial limited geotechnical exploration at the Subject Property within a reasonable degree of engineering certainty indicated that subsidence due to sinkhole activity was the most likely cause of the observed distress at the Subject Property.

15. Pursuant to the DEFINITIONS section under Selective's COMMERCIAL OUTPUT PROGRAM PROPERTY COVERAGE PART (CO-1000 10/02), the denial, based on the evidence presented, is improper. Under the DEFINITIONS, it is provided that:

> **29.** "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

16. Coverage of the Insured's claim is afforded under the Policy for "Sinkhole Collapse". As per GEOServices, this is the exact event that has caused the loss at the Subject Property.

17. Selective hired Rimkus to investigae the Claim and underlying cause of the foundation's movement. Not surprisingly, Rimkus' report did not agree with GEOServices.

18. Addendum No. 3, pages 4 and 5, by GEOServices sets forth additional findings disputing Rimkus's findings and again concluding as set forth in Exhibit C that the damages and loss at Building No. 4 were due to sinkhole activity.

19. Contrary to December 2017 Rimkus report (obtained by Selective) implying the Subject Property was not constructed within a closed contour depression, GEOServices clearly found that per the United States Geological Survey (USGS) Geologic Map of the Maryville Quadrangle (Cattermole, 1962) that Building 4 was constructed within a mapped closed contour depression, which in turn creates an elevated risk of sinkhole formation.

20. Selective's denial seeks to ignore or minimize, without any applicable basis, the reports and proper findings submitted by GEOServices as to the Sinkhole Collapse at the Subject Property.

21. The losses incurred by the Insured should be covered under the Policy. Tenn. Code Ann. § 56-7-105.

22. The Insured has incurred damages to the Subject Property in an amount no less than $90,691.75 based on a cost to repair. In addition, Insured seeks additional costs to return the Subject Property to the condition it was in at the date of loss of December 16, 2016, including without limitation:

   (i) Repair/Replace masonry end wall. This will probably require the replacement of this wall;
   (ii) Repair asphalt where borings were taken/settlement occurred at grade level man door;
   (iii) The landscaping repaired/replaced where the foundations were repaired and it was removed;
   (iv) Re-caulk control joints in masonry walls; and,
   (v) Replace office/bathrooms that had to be removed to repair the sinkhole/building foundations.

23. The Insured has and continues to suffer loss of rent due to the refusal of Selective to pay the Claim. The loss of rents for the period of time from January 1, 2017 through August 31, 2018 which totals 20 months at $1,983.13 per month, is $39,662.60, which amount will, as stated, increase in the amount of $1,983.13 monthly.

24. Further, based on demand by Selective, the Insured paid half of the Rimkus bill in the amount of $2,500.00 while reserving its rights to contest its findings and seeking reimbursement for this amount herein.

## COUNT I: BREACH OF INSURANCE CONTRACT

25. Insured re-avers allegations contained in Paragraphs 1 through 24 of this Complaint and incorporates them herein by reference.

26. Insured and Selective entered into a contract of insurance.

27. Selective breached the insurance contract by refusing to accept Insured's Claims and pay its losses properly due under the Insurance Policy and Insured has suffered damages.

28. Based on the Selective's breach of the insurance Policy, Insured is entitled to the recovery of all damages proven for such breach, including cost of repairs, and loss rents.

## COUNT II: BAD FAITH REFUSAL TO PAY

29. Insured reavers its allegations contained in Paragraphs 1-28 of the Complaint and incorporates them herein by reference.

30. Following the discovery of the sinkhole at the Property, Insured demanded a payment from Selective under the Insurance Policy.

31. Selective refused to make adequate payment to Insured as was required under the Insurance Policy.

32. Selective's refusal to make adequate payment to Insured was made without a reasonable basis in fact or law.

33. Selective's refusal to make adequate payment to Insured was made in bad faith and for the purpose of denying the benefits of the Insurance Policy to Insured.

34. Selective owed Insureds the following duties, among others: (a) a duty to honor the insurance contract for the entire policy duration; (b) a duty to conduct a prompt, reasonable and diligent investigation of the facts of the case to determine the validity of the claims made by Insured against Selective; (c) a duty to evaluate the Insured's claims fairly; (d) a duty to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim where liability is reasonably clear; (e) a duty to act promptly and reasonably in settling the claim; (f) a duty not to reject a reasonable and fair offer of settlement; (g) a duty not to put its insured through unnecessary litigation; (h) a duty not to put its insured's assets at risk; (i) a duty to refrain from actions that would injure Insured's ability to obtain the benefits of the insurance contract; and (j) a duty of good faith and fair dealing.

35. Selective breached the Insurance Policy and its duties owed to Insured.

36. Insured gave Selective sixty (60) days' notice pursuant to Tenn. Code Ann. § 56-7-105 that it intended to claim bad faith refusal to pay on Selective's part.

37. Selective's actions herein constitute bad faith insurance practices under Tennessee law codified at Tenn. Code Ann. § 56-7-105 et seq.

38. Pursuant to the above referenced statute, Insured seeks a sum not exceeding twenty-five percent (25%) on the liability for the loss from Selective due to its bad faith insurance practices plus attorney's fees Insured incurred in bringing this action against Selective.

7
Case 3:18-cv-00482-TRM-HBG   Document 14   Filed 01/16/19   Page 7 of 10   PageID #: 246

**WHEREFORE,** premises considered, Plaintiff, John R. Fiser, Inc. prays that it be accorded the following relief:

1. That process is served on the Defendant, Selective Insurance Company of America and it be required to answer the Complaint;

2. That the Court enter a judgment against Selective in favor of Insured for damages to the Subject Property caused by Selective's breach of contract and incidental and consequential damages in an amount to be proven at trial but in any event, no less than $95,000.00 plus loss of rents at $1,983.13 per month as well as expenses paid for reports and assessments;

3. That the Court award an additional twenty-five percent (25%) of the liability award to Insured as damages and award attorney's fees and discretionary costs in bringing this action against Selective due to the bad faith refusal to pay Selective pursuant to Tenn. Code Ann. § 56-7-105 et seq.;

4. That all costs of this action be taxed against the Selective;

5. That this cause be tried by a jury; and

5. That Insured have such other, further and general relief to which it may be entitled.

Respectfully submitted this the 16th day of January, 2019.

BERNSTEIN, STAIR & MCADAMS LLP

By: _____
W. TYLER CHASTAIN (BPR #016029)
116 Agnes Road
Knoxville, Tennessee 37919
(865) 546-8030

Counsel for Plaintiff, John R. Fiser, Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 16th day of January, 2019, the foregoing was served via the Court's electronic filing system to the following counsel of record:

>Michael J. Vetter, Sr. Esq.
>Spicer Rudstrom, PLLC
>Bank of America Plaza
>414 Union Street
>Suite 1700
>Nashville, Tennessee 37219-1823

>BERNSTEIN, STAIR & McADAMS LLP

>By: _____
>W. TYLER CHASTAIN (BPR # 016029)

**EXHIBIT LIST**

A:    GEO SERVICES REPORT
B:    COPY OF INSURANCE POLICY
C:    (a) "Report of Limited Geotechnical Exploration, Northpark Boulevard Buildings 4, 5, and 10 Distress Evaluation", dated November 14, 2016; (b) "Addendum No, 2", dated December 20, 2017; and (c) "Addendum No. 3" dated January 9, 2018.